IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RALPH MERRILL, an individual and General Partner of QUINN'S JUNCTION PARTNERSHIP,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SUMMIT COUNTY, ET AL.,<br><br>　　　　　Defendants. | MEMORANDUM DECISION & ORDER<br><br><br>Case No.  2:08CV723DAK |

This matter is before the court on Defendants Summit County and Board of County Commissioners of Summit County's Motion to Dismiss.  The court held a hearing on the motion on February 24, 2009.  At the hearing, Plaintiff was represented by Greg S. Ericksen and Scott M. Lilja, and Defendants were represented by Jody K. Burnett.  The court has carefully considered the pleadings and memoranda submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

BACKGROUND

Plaintiff Ralph Merrill is a General Partner of Quinn's Junction Partnership ("QJP"). QJP is the owner of approximately 30 acres located on the southwest corner of the intersection of Highway 40 and Highway 248 in Summit County, Utah ("Parcel").  The intersection is known as Quinn Junction.  QJP alleges that for over 17 years it has sought to obtain approval from Summit

County for an economically viable use for the Parcel. QJP alleges that Summit County has prohibited any such use and has implemented a plan designed to either maintain the property in its undeveloped state or obtain the property as open space at artificially depressed values.

When QJP obtained the Parcel in 1991, the property was zoned commercial. While the Parcel was zoned commercial, QJP's predecessor-in-interest submitted a completed application for certain development of the Parcel. In 1993, however, Summit County adopted a new land use code that down-zoned the Parcel into a base-density zone and eliminated QJP's right to obtain any development approval for at least ten years. From that time to the present, QJP has undertaken administrative efforts to reinstate the commercial zoning or otherwise obtain approval for an economically viable use for the Parcel.

In 1993, QJP filed a request with Summit County for a general plan amendment, which was denied by the County on January 6, 1995. QJP obtained a hearing before the Summit County Planning Commission on its claim that it had a vested right to consideration of its development application under the 1985 Snyderville Basin Code, which was also denied. QJP then requested a final "vested rights and Constitutional claims" determination from the Summit County Board of Commissioners. A hearing was held on August 29, 1995, and the Board of Commissioners voted unanimously to refer the matter back to the Summit County Planning Commission for planning concerning a sub-area commercial zone for the Parcel. The Board of Commissioners directed the planning commission to "make it a priority."

QJP, however, alleges that the planning commission refused to carry out the Board's orders and from that time forward, the County has stonewalled every effort to obtain any development approval. QJP states that the County subjected it to several major studies which

took years to complete and created a circuitous and never ending process involving continuous code changes and amendments.

Through the courts, QJP has sought compensation for the taking of the Parcel from both Park City and Summit County. QJP filed this case and a related case against Park City in the state court seeking compensation for the taking under the Utah and United States constitutions. It is not clearly stated in QJP's filings, but the Park City action appears to be older than this action. In relation to that case, it appears from QJP's allegations that the parties went through the ombudsmen process provided for under Utah state statute and that QJP received an adverse ruling in that process.

QJP's Complaint states that it is a petition and complaint seeking de novo review of the opinion of the Property Rights Ombudsmen, issued August 5, 2008. It further states that the asserted claims are brought pursuant to Utah Code Ann. § 17-27a-101, § 78B-6-401, § 14-43-204, Summit County Administrative Code § 14.1.1 (1993), Article I, Section 22 of the Utah Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. The present action therefore seeks review of the Ombudsmen's ruling, asserts takings claims under the Utah and United States Constitution, and also seeks compensation based on Summit County's alleged violation of QJP's right to equal protection under the Utah and United States constitutions.

Defendants removed the action from state court on the basis of federal question jurisdiction and then filed this Motion to Dismiss.

## DISCUSSION

**Defendants' Motion to Dismiss**

Defendants Summit County and Board of County Commissioners of Summit County (collectively "the County"), argue that QJP's federal takings claim must be dismissed without prejudice for failure to satisfy ripeness and finality requirements which are a necessary prerequisite to federal constitutional review. Following dismissal of the federal claims, and to the extent that QJP pleads cognizable pendent state law claims, the County asks that such state law claims be dismissed without prejudice for lack of subject matter jurisdiction and remanded to state court.

"The Fifth Amendment does not prohibit the government from taking its citizens' property; it merely prohibits the government from taking property without paying just compensation." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991), *cert. denied*, 112 S. Ct. 1174 (1992). Therefore, to state a federal constitutional claim for takings, a plaintiff must show more than a deprivation of property. A plaintiff must also show that the state refused to compensate it for its loss. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-97 (1985).

The County argues that it is equally clear that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the state for obtaining such compensation." *Id.* at 195. A Fifth Amendment takings claim "is not ripe until the property owner has attempted to obtain, and been denied, compensation using state procedures." *J.B. Ranch Inc. v. Grand County*, 958 F.2d 306, 308 (10th Cir. 1992). In addition, "state procedures which permit a property owner to obtain just compensation must be utilized before bringing a §

4

1983 claim." *Katsos v. Salt Lake City Corp.*, 634 F. Supp. 100, 106 (D. Utah 1986).

Constitutionally and statutorily, Utah provides for a procedure to assert claims involving allegations of the taking or damaging of private property for public uses without just compensation. Utah Const. Art. I, Sect. 22; Utah Code Ann. § 63G-7-302; *see also J.B. Ranch*, 958 F.2d at 308. The County asserts that the question of whether QJP will be compensated as it claims it should be for any alleged taking of its property under Utah law is a question that has to be finally adjudicated through state court. And the County contends that until QJP avails itself of state remedies, its Fifth Amendment takings claim is unripe.

The County does not argue that QJP's state claims are not ripe for failure to obtain a final decision from the responsible governmental entity. The County's only argument is that QJP's federal claims cannot be asserted until it obtains a final decision from a state court on its state law claims. But the state court adjudication that the County claims QJP needs in order to bring its federal claims is the adjudication QJP was seeking when it filed this action. The County is the entity that removed the action from state court. In the state court action, QJP asserted its takings claims under the Utah Constitution and, alternatively, under the United States Constitution.

The main dispute between the parties focuses on whether QJP can assert state and federal takings claims in the same action. The County argues that it removed the case to federal court specifically to have the federal court remove the federal claims from QJP's state court action. QJP, however, argues that the Supreme Court's decision in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005) expressly held that its prior case law, specifically *Williamson* which is relied on by the County, did not preclude a plaintiff from bringing an alternative federal takings claims in a state court action. *Id.* at 345-46.

In *San Remo*, the court explained that "the requirement that aggrieved property owners must seek 'compensation through the procedures the State has provided for doing so,' does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution.'" *Id.* at 346.  The Court observed that a rule prohibiting a court from hearing both federal and state claims would require property owners to "resort to piecemeal litigation or otherwise unfair procedures." *Id.*  The Court also stated that "[i]t is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state court."

It is clear that *Williamson* precludes a plaintiff from filing a federal takings claim in federal court prior to the state's final adjudication of a state takings claim. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-97 (1985).  QJP, however, did not file its federal claims in federal court as is prohibited by *Williamson*.  Instead, QJP filed its alternative state and federal claims simultaneously in state court.  That procedure has been expressly approved by the Supreme Court in *San Remo*.  545 U.S. at 346.  Even if the language in *San Remo* could be characterized as dicta, the language clearly supports a Plaintiff's ability to bring the alternative claims in the same action.  Moreover, the County is the party that removed this action to federal court.  It cannot now complain that there is no state court decision.  The court concludes that the language in *San Remo* provides a basis for the assertion of an alternative federal takings claims in the same action in which the plaintiff asserts its state takings claim. This conclusion is not at odds with *Williamson County*.  While the County cites cases that preclude a separate federal action prior to the conclusion of a state court action, it does not cite

any case that specifically precludes a party from bringing both federal and state takings claims in the same action.

The court, therefore, finds no basis for dismissing the federal claims on the grounds of ripeness or finality. The alternative claims shall proceed in this court. Accordingly, the County's motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, Defendants Summit County and Board of County Commissioners of Summit County's Motion to Dismiss is DENIED.

DATED this 2d day of March, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge